UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KORETTA WILKERSON,                        Case No. 16-11153

             Plaintiff,                   Marianne O. Battani
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Stephanie Dawkins Davis
                                          United States Magistrate Judge
             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 16)**

**I.     PROCEDURAL HISTORY**

       A.      Proceedings in this Court

       On March 30, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Marianne O.

Battani referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 14, 15).  Plaintiff

also filed a reply in support of her motion.  (Dkt. 17).  The cross-motions are now

ready for report and recommendation.

B.    Administrative Proceedings

On March 13, 2013, plaintiff filed claims for period of disability and

disability insurance benefits alleging disability beginning February 1, 2013.  (Tr.

13).[1]  The Commissioner initially denied plaintiff's disability application on

October 2, 2013.  *Id*.  Thereafter, plaintiff requested an administrative hearing, and

on February 11, 2015, she appeared with counsel before Administrative Law

Judge ("ALJ") Kurt D. Shuman, who considered her case *de novo*.  (Tr. 35-86).  In

a March 4, 2015 decision, the ALJ determined that plaintiff was not disabled

within the meaning of the Social Security Act.  (Tr. 10-32).  The ALJ's decision

became the final decision of the Commissioner on February 1, 2016, when the

Social Security Administration's Appeals Council denied plaintiff's request for

review.  (Tr. 1-6).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, and that findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings under

Sentence Four.

---

[1] Citations to the Social Security transcript will be identified as "Tr." and the transcript
can be found at Docket Entry 10.

## II. FACTUAL BACKGROUND

### A. ALJ Findings

Plaintiff was 50 years old, falling into the closely approaching advanced age category, on the alleged disability date. (Tr. 30). Plaintiff, a resident of Burt, Michigan, has a high school education and past relevant work as a restaurant manager and cashier, which are both light work jobs. *Id*.; *see also* Dkt. 1, Pg ID 1. Plaintiff testified that she could not work because of the difficulty she had lifting along with leg pain and numbness. (Tr. 48).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the alleged onset date. (Tr. 15). At step two, the ALJ found that plaintiff had the following severe impairments: multiple left knee total arthroplasty; osteoporosis in left knee; insulin dependent diabetes; coronary artery disease; obstructive sleep apnea; fatty liver disease; and morbid obesity. *Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. (Tr. 18-20). The ALJ determined the following as to plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in

20 CFR 404.1567(b) except that she can only stand or walk for a total of about two hours in an eight-hour day with normal breaks, and sit for a total of about six hours in an eight-hour day with normal breaks. She should never be required to climb ladders, ropes, or scaffolds, but she is able to frequently balance. She is further limited in that she is only able to occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, and is only able to occasionally reach overhead or behind her back with her left upper extremity. The claimant can frequently handle, finger, and feel, bilaterally. She is further limited in that she must avoid frequent exposure to excessive vibration, and frequent walking on uneven surfaces.

*Id.* at 20. At step four, the ALJ determined that plaintiff could not perform her past relevant work. *Id*. at 30. At step five, the ALJ concluded that based on plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed and, therefore, she was not under a disability from the date of the application through the date of the decision. *Id*. at 30-32.

B.    Plaintiff's Points of Error

Plaintiff argues that the ALJ's RFC and other findings actually require a conclusion that she is disabled under Agency policy. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.14 (requiring a finding of disability based on Plaintiff's vocational factors and a sedentary RFC); SSR 83-10, 1983 WL 31251 *5-6 (stating that the lifting and carrying demands of light work require more than

2 hours of standing/walking and that the primary difference between light and sedentary work is that light work requires a good deal more standing and walking). The ALJ found, in pertinent part, that plaintiff retained the RFC to stand and walk for approximately 2 hours and sit for 6 hours in an 8-hour workday, yet characterized it as a "light work" RFC. (Tr. 20). The ALJ's RFC finding, however, is internally inconsistent and, in fact, does not represent a light work RFC under Agency policy. According to plaintiff, an RFC that limits a claimant to approximately 2 hours of standing and walking in an 8-hour workday is an RFC for sedentary, not light work because, under Agency policy, frequent lifting and carrying, which light work by definition includes, requires frequent standing and walking. And, frequent is defined as 1/3 to 2/3 of the workday, which is more than 2 hours. *See* SSR 83-10, 1983 WL 31251 *5-6. To say that plaintiff can lift and carry 10 pounds frequently (the definition of light work), while standing and walking for 2 hours in an 8 hour work day is both internally inconsistent and a direct contradiction of Agency policy.

Moreover, and consistent with this reasoning, the Agency itself directs ALJs to apply the sedentary Medical-Vocational rules where a claimant is limited to even as much as 4 hours of standing/walking. *See* Program Operations Manual System (POMS) DI 25015.006E.1.d (stating that limiting a claimant to four hours of standing and/or walking erodes the occupational base for light work so

significantly that a sedentary rule should be used as a framework for the disability determination).  Thus, plaintiff maintains, the RFC in this case, limiting plaintiff to 2 hours of standing and/or walking, is one for sedentary work.  This is critical because the Agency's Medical-Vocational rules require that plaintiff be found disabled if she is limited to sedentary work.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.14.

Agency policy specifically explains that frequent lifting and carrying means "being on one's feet for up to two-thirds of the workday," and that a "good deal of standing or walking" is "the primary difference between sedentary and most light jobs."  *See* SSR 83-10, 1983 WL 31251 *5-6; *see also* SSR 83-14, 1983 WL 31254 *4.  In the "relatively few" cases when a seated job is classified as "light," it is because it involves "pushing and pulling of arm-hand or leg-foot controls which require greater exertion than in sedentary work."  *Id.*  Notably, the three jobs identified by the VE in this case are not jobs which involve pushing and pulling of arm-hand or leg-foot controls.  (Tr. 31, 80-81); see Dictionary of Occupational Titles (Dep't of Labor, 4th ed., 1991) (DOT) ## 344.667-010; 237.367-018; 652.685-094.  Although the VE testified that the DOT identifies the jobs at issue as light (Tr. 31, 80-81), they are sedentary jobs (under the Commissioner's definitions of light versus sedentary work) if performed in accordance with the ALJ's RFC finding.  *See* SSR 83-10, 1983 WL 31251 *5-6.

Moreover, the fact that the DOT identifies a job as light, does not necessarily make it light as performed specifically, because "the DOT lists maximum requirements of occupations as generally performed." *See* SSR 00-4p, 2000 WL 1898704 *3.

Thus, according to plaintiff, the relevant question is not how a job is classified, it is how it must be performed given the claimant's RFC. Agency policy in regard to this issue is unambiguous: An ALJ may not rely on evidence provided by a VE or any other source "if that evidence is based on underlying assumptions or definitions that are inconsistent with [Agency] regulatory policies or definitions. Although there may be a reason for classifying the exertional demands of an occupation differently than the DOT, the regulatory definitions of exertional levels are controlling." SSR 00-4p, 2000 WL 1898704 *3. According to plaintiff, the evidence presented by the VE is inconsistent with the controlling regulatory definition of light work. Plaintiff says that unless she can stand and walk for 1/3 to 2/3 of an 8-hour day, then she cannot perform even the minimum level of standing, walking, lifting and carrying required for light work as the Agency defines that term. *See* SSR 83-10, 1983 WL 31251 *5-6; 20 C.F.R. § 404.1567(b). Simply put, under the Agency's own definitions, one cannot take a sedentary RFC and render it light simply by calling it so, when its restrictions are actually consistent with the sedentary level. (Tr. 20). Rather, the Commissioner

recognizes that lifting and carrying require standing and walking. SSR 83-10, 1983 WL 31251 *5-6; 20 C.F.R. § 404.1567(b). Plaintiff maintains that because any jobs identified under the ALJ's RFC finding would need to be performed at a sedentary exertional level under Agency policy, neither the light exertional rules nor any jobs identified under those rules may be used to support a determination of non-disability on the facts of this case. According to plaintiff, the ALJ's misapplication of Agency policy resulted from his erroneous assumption that the rules for light work were applicable to this case (Tr. 20, 31), when, in fact, they are not.

Plaintiff relies on a number of out-of-circuit cases in support of her position. *See Campbell v. Astrue*, 2010 WL 4689521 at *5 (E.D. Pa. 2010) (identifying a dispositive conflict between an ALJ's findings that a claimant was limited to 2 hours of standing and walking, but could still do "light" work); *Bisceglia v. Colvin*, 2016 WL 1248860 at *7-8 (E.D. Va. Mar. 25, 2016) (remanding where ALJ assessed a light work RFC but limited claimant to 2 hours of standing/walking); *Ford v. Colvin*, 2015 WL 4608136 at *7-8 (D. Del. Jul. 31, 2015) (remanding where ALJ's RFC contradicted his characterization of it as limiting plaintiff to light work and following *Campbell*); *Ferdin v. Colvin*, 2015 WL 7767980 at *11 (W.D. Tex. Jul. 30, 2015) (following *Campbell* and remanding where light RFC was contradicted by limitation to 2 hours of standing

and walking); *Riley v. Colvin*, 2014 WL 4796602 at *8 (M.D. Pa. Sept. 26, 2014) (following *Campbell* and finding that, "[w]hen apparent internal inconsistencies in an ALJ's [RFC] may have an outcome determinative impact upon a social security determination under the Medical Vocational Guideline grids," remand to clarify these inconsistencies is typically necessary). Accordingly, plaintiff says she must be found disabled based on the ALJ's own RFC finding and the application of Grid Rule 201.14. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14 (directing a finding of disability at age 50 based on a sedentary RFC, high school education or more, and no transferable skills); SSR 83-10, 1983 WL 31251 at *5-6 (specifying that only sedentary work can be done with standing and walking for less than 1/3 of an 8-hour workday); SSR 00-4p, 2000 WL 1898704 *3 (stating that an ALJ may not rely on vocational evidence that is inconsistent with Agency definitions). Because the ALJ's application of the wrong Medical-Vocational rule changed the outcome of this case, plaintiff asserts that it was not harmless error (Tr. 30-31).

Plaintiff also argues that the ALJ violated the agency's own POMS rules, further warranting remand. Specifically, POMS DI 25025.015(D) addresses the situation where a claimant's exertional capacity falls between two grid rules and the rules direct opposite conclusions. Under Agency policy, use of the grid rule directing a finding of non-disability is required where the claimant has only "a

slightly reduced capacity for the higher level of exertion." POMS DI

25025.015(D). By contrast, use of the grid rule directing a finding of disability is

required where the claimant has "a significantly reduced capacity for the higher

level of exertion." *Id*. The question becomes whether plaintiff's RFC was slightly

reduced or significantly reduced from the higher level of exertion. Agency policy

and the facts of this case answer this question definitively. Under Agency policy,

the "primary difference between sedentary and most light jobs" is the number of

hours spent standing/walking. SSR 83-10, 1983 WL 31251 *5. Thus, in the area

which most distinguishes light jobs from sedentary jobs, plaintiff has a

standing/walking capacity which is consistent with sedentary work and not light

work. As a matter of Agency policy, plaintiff's sedentary stand/walk capacity of 2

hours represents a "significantly reduced capacity" for the higher level of exertion

(light). For this reason alone, plaintiff asserts that an award of benefits is required

under the POMS. And, according to plaintiff, an outright award of benefits cannot

be avoided, based simply on the ALJ's own RFC finding.

Plaintiff next argues that because SSA's POMS are binding on the ALJ

consistent with SSR 13-2p, and they provide that an ALJ is obligated to explain

why he applies one grid rule over another when the claimant's RFC falls between

two grid rules that direct opposite conclusions. POMS DI 25025.015(D). Plaintiff

says it is undisputed that her exertional abilities fell somewhere between grid rules

202.14 (light work) and 201.14 (sedentary) and that grid rule 201.14 directs a finding of not disabled whereas grid rule 202.14 directs a finding of disabled. Thus, this presents the exact situation covered by POMS DI 25025.015(D). Despite this, plaintiff says that the ALJ provided absolutely no explanation why grid rule 202.14 was noted and why he did not apply grid rule 201.14 in light of the RFC here. (Tr. 30-31). Plaintiff points out that the POMS are actually emphatic in mandating such an explanation. In the section addressing RFCs falling between two opposing grid rules the POMS states in bold font and all capital letters the following: "IMPORTANT: Always explain the basis of your conclusions." POMS DI 25025.015(D). The ALJ's decision is defective as a matter of law because it does not provide any of the explanation which this POMS provision mandates. (Tr. 30-31).

Plaintiff also contends that the ALJ's decision contains an additional but related violation of the POMS. POMS DI 25025.015(D) provides that an ALJ must seek the specific input of a VE "to determine which rule most closely approximates the claimant's RFC and vocational factors." The ALJ did not question the VE whatsoever with respect to this issue despite the mandate of the POMS. (Tr. 77-82). Accordingly, under POMS DI 25025.015(D), the ALJ should have sought clarification from the VE as to which grid rule most closely approximated the RFC and vocational factors, rule 202.14 versus 201.14. In

failing to do so, the ALJ committed a blatant violation of black letter Agency policy by not seeking the specific VE input required by the POMS.

C.    Commissioner's Motion for Summary Judgment

The Commissioner disagrees with plaintiff's characterization of how the Grids operate. The Grids consider four factors relevant to a particular claimant's employability: RFC, age, education, and work experience. 20 C.F.R. Part 404, Subpart P, Appendix 2. A claimant may be awarded benefits if she satisfies the requirements of one of the particular Grid rules correlating to a finding of disability. *Id*. at § 200.00. Where an individual's exertional RFC does not coincide with the definition of any ranges of work as defined in 20 C.F.R. § 404.1567 (i.e. sedentary, light, medium, heavy), the occupational base is affected, and the ALJ will consider the extent of any erosion of the occupational base. *See* SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). In such a situation, the ALJ uses the Grids only as a framework for decisionmaking and relies on other vocational evidence, such as VE testimony, to determine whether the claimant can still do a significant number of jobs with her limitations. *See Burton v. Sec'y of Health & Human Servs*., 893 F.2d 821, 822 (6th Cir. 1990); *see also* SSR 83-12, 1983 WL 31253, at *2-3. Here, the Commissioner says the ALJ assessed the plaintiff with the RFC limitations, then questioned the VE to determine whether there existed a significant number of jobs a hypothetical individual could perform

with these specific limitations. (Tr. 78-80). The VE identified the jobs of ticket taker, information clerk, and ticket printer and tagger. (Tr. 80-82). According to the Commissioner, the ALJ appropriately relied on this testimony as substantial evidence that there were jobs that plaintiff could perform and properly concluded that plaintiff was not disabled within the meaning of the Act.

The Commissioner also argues that plaintiff's position has been rejected by the Sixth Circuit in *Anderson v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 32, 35-36 (6th Cir. 2010), in which the Court rejected the plaintiff's argument that because the jobs identified by the VE were sedentary, not light, the ALJ could not conclude that plaintiff is not disabled. In *Anderson*, the plaintiff argued that if the jobs identified by the VE could have been performed by someone with a sedentary RFC, then the VE's testimony would change his RFC from light to sedentary, dictating a finding of disabled. *Id*. at 36. The Sixth Circuit rejected this argument:

> That is not how the system operates. The RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy. See 20 C.F.R. § 404.1545(a) (listing factors that determine an RFC). The VE does not testify as to what the claimant is physically capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities. Thus, in a step-five analysis, the VE's testimony depends upon the RFC and not the other way around.

*Id*. Thus, the Commissioner maintains that plaintiff's contention that the ALJ was

mandated to reach a conclusion based on a particular Grid rule is meritless where, as here, the ALJ properly used the Grids only as a framework and properly obtained supplemental VE testimony. *See Burton*, 893 F.2d at 822-23.

The Commissioner urges the Court to reject the out-of-circuit authority that follow the holding in *Campbell v. Astrue*, 2010 WL 4689521 (E.D. Pa. Nov. 2, 2010). The Commissioner points out that the holding in *Campbell* has been rejected by at least one district court in the Sixth Circuit, which concluded that:

> . . . the Campbell court failed to appreciate that 20 C.F.R. §416.967(b) and Social Security Ruling 83-10 provide requirements for a full range of light work, not a limited range of light work. In the present matter, the ALJ recognized that the Plaintiff had additional limitations that impeded her ability to perform a full range of light work. Consistent with Social Security Ruling 83-12 . . . the ALJ consulted a vocational expert, provided the vocational expert a function-by-function assessment of the Plaintiff's abilities, and based upon those abilities, the vocational expert opined that jobs existed within the area of light, unskilled work that accommodated the Plaintiff's RFC.
>
> Accordingly, because the Plaintiff's ability to walk and stand for two hours in an eight-hour workday does not conflict with a reduced range of light work, and is supported by the vocational expert's testimony, the Court finds that the ALJ did not err at step five. Therefore, the Plaintiff's allegation of error is not well-taken.

*Freeman v. Colvin*, 2016 WL 697140, at *6 (E.D. Tenn. Feb. 19, 2016) (citations and quotations omitted). The Commissioner says that plaintiff makes similarly

flawed arguments here, as she fails to recognize that SSR 83-10 discusses the requirements for a full range of light work. *See* SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983).

According to the Commissioner, plaintiff incorrectly asserts that, pursuant to SSR 83-10, the ALJ was obligated to find that she was limited to sedentary work and, therefore, disabled based on the Grids. SSR 83-10 provides that an ALJ can rely on the Grids to make a determination only if the claimant is capable of performing "substantially all (nearly all) of the primary strength activities defining the particular level of exertion." SSR 83-10, 1983 WL 31251, at *2. Plaintiff asserts that because she was incapable of performing "substantially all" of the range of work at the light level of exertion, the ALJ was required to place her in the sedentary category of exertion. However, SSR 83-10 also provides that, unless all the criteria of a particular rule are satisfied, the Grids do not direct a particular finding as to disability, but are instead consulted "as guidance for decisionmaking." SSR 83-10, 1983 WL 31251, at *1. The Commissioner maintains that since plaintiff's RFC fell between the sedentary and light levels of exertion, the ALJ could not exclusively rely on the Grids in finding that Plaintiff was not disabled.

Instead, the ALJ questioned a VE who testified that there existed a significant number of jobs that plaintiff could perform consistent with her RFC.

Because the VE identified some light jobs that Plaintiff could perform, the ALJ was not required to find that she was limited to the sedentary work category. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003) (considering SSR 83-12, and finding "no support" for claimant's attempt "to use the fact that she is not capable of doing all of the jobs in the light work category due to her nonexertional limitation . . . to drop her category level down to sedentary"); *Hammond v. Apfel*, 2000 WL 420680, at *4-5 (6th Cir. Apr. 12, 2000) (since a VE identified some light jobs that the claimant could perform, ALJ was not required to find that the claimant was limited to the sedentary category).

The Commissioner also argues that plaintiff's contention that the ALJ improperly relied on the VE's testimony in violation of SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), is unavailing. At the hearing, the ALJ posed a hypothetical to the VE involving an individual who could stand or walk for up to two hours in an eight-hour workday. (Tr. 79). The VE identified several jobs in the light exertional category that she believed Plaintiff could perform with this limitation. (Tr. 80-82). According to the Commissioner, neither the Dictionary of Occupational Titles (DOT) nor the regulations state a specific number of hours that an employee must be able to stand or walk in order to qualify for light work. However, the regulations suggest that six out of eight hours is approximately equal to the full range of light work. SSR 83-10, 1983 WL 31251, at *5-6.

Additionally, SSR 00-4p explains that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, at *3. Therefore, says the Commissioner, since the ALJ did not find that plaintiff could perform the full range of light work, the ALJ properly relied on the VE's testimony, pursuant to SSR 00-4p, that jobs existed in the light exertional category that plaintiff could perform with a two-hour standing/walking limitation.

The Commissioner next argues that plaintiff's contention that POMS § DI 25015.006E.1.d "directs ALJs to apply the sedentary [Grids] rules where a claimant is limited to even as much as 4 hours of standing/walking" is unavailing. POMS § DI 25015.006 concerns the "Borderline Age" policy, and POMS § DI 25015.006E.1.d discusses RFC considerations within borderline age situations. *See* POMS § DI 25015.006. As plaintiff does not contend that a borderline age policy should apply or challenge the ALJ's finding concerning her age category, the Commissioner says this policy guidance is inapplicable here.

Next, the Commissioner asserts that the Court should reject plaintiff's argument that the ALJ committed reversible error in failing to adhere to POMS § DI 25025.015(D). This POMS provision accords the ALJ wide discretion in

choosing a Grid rule when a claimant can perform a limited range of work at a certain exertional level. POMS § DI 25025.015(D) (directing ALJs to apply the "higher-numbered rule and find the claimant not disabled if you conclude the claimant has a slightly reduced capacity for the higher level of exertion; or [the] lower-numbered rule and find the claimant disabled if you conclude the claimant has a significantly reduced capacity for the higher level of exertion"). The Commissioner says that plaintiff points to nothing in the record to demonstrate the ALJ departed from this guidance. The ALJ did not determine that plaintiff had "a significantly reduced capacity" for light work. Instead, the ALJ appropriately applied SSR 83-12, concluded that plaintiff could perform a limited range of light work, and questioned the VE to determine if jobs existed that an individual with plaintiff's limitations could perform.

The Commissioner also argues that plaintiff's contentions that, pursuant to SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), the ALJ is bound by the POMS (P. Br. 4 at n.2) and must "explain why he applie[d] one grid rule over another when the claimant's RFC falls between two grid rules that direct opposite conclusions" are meritless. (P. Br. 9). The Commissioner points out that SSR 13-2p is entitled "Evaluating Cases Involving Drug Addiction and Alcoholism." SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013). Because this case does not involve drug addiction or alcoholism, SSR 13-2p is inapplicable. Second, the portion of SSR 13-2p that

plaintiff cites outlines how adjudicators are to consider federal district and circuit

court decisions that conflict with Agency policy concerning drug addiction and

alcoholism. SSR 13-2p, 2013 WL 621536, at *15. As plaintiff has failed to

identify a misinterpretation of such an Agency policy, SSR 13-2p is again,

inapplicable. The Commissioner maintains that plaintiff's insistence that the

"ALJ's decision is defective as a matter of law because it does not provide any of

the explanation which this POMS provision mandates" (P. Br. 10, emphasis

added) is meritless. Rather, according to the Commissioner, the POMS are an

internal agency manual and failure to follow the POMS is not legal error. *See*

*Davis v. Sec'y of Health & Human Servs*., 867 F.2d 336, 340 (6th Cir. 1989)

("POMS is a policy and procedure manual that employees of the Department of

Health & Human Services use in evaluating Social Security claims and does not

have the force and effect of law.").

D.     Plaintiff's Reply

In reply, plaintiff asserts that *Anderson v. Comm'r of Soc. Sec*., 406 Fed.

Appx. 32, 36 (6th Cir. 2010), on which the Commissioner primarily relies, is

unpublished and distinguishable on its facts. According to plaintiff, *Anderson* is

distinguishable on two key points. First, the ALJ's RFC there did not quantify

how much standing/walking the claimant could do, but rather limited him to a

range of light work with a sit/stand option due to his inability to stand for long

periods of time. *Anderson*, 406 Fed. Appx. at 33. In contrast, plaintiff was specifically limited to two hours of standing/walking (Tr. 20); thus, the claimant in *Anderson* would have been able to perform greater standing and walking requirements more consistent with light work than sedentary. Second, the claimant in *Anderson* rested his argument on the fact that the VE there only identified sedentary work at Step 5, and argued that, due to this, the ALJ should have limited him to sedentary, and not light, work. *Id*. at 35-36. The court in *Anderson* explained that it was not the VE's identified jobs, but rather the RFC, that determined whether or not a claimant was limited to sedentary work. *Id*. at 36. The RFC here clearly limits plaintiff to sedentary work and, thus, plaintiff maintains that *Anderson* is distinguishable. (Tr. 20); SSR 83-10, 1983 WL 31251 *5-6 (stating that the lifting and carrying demands of light work require more than 2 hours of standing/walking and that the primary difference between light and sedentary work is that light work requires a good deal more standing and walking).

Plaintiff also suggests that the Commissioner inappropriately relies on *Freeman v. Colvin*, 2016 WL 697140 (E.D. Tenn. Feb. 19, 2016), another unpublished, and distinguishable case. In *Freeman*, the court found the claimant's RFC provided for a range of light work (versus sedentary) because, although it limited her to standing/walking for two hours, it provided that she could engage in frequent pulling and pushing of leg or foot controls, one of the exceptions for

classifying light work that involves a large amount of sitting. *Id.* at *1, *4-6. The *Freeman* court distinguished *Campbell* in part on this basis, stating that, unlike there, the ALJ had specified limitations and the VE had identified jobs involving pushing and pulling of leg or foot controls. *Id*. at *6. Plaintiff points out that unlike *Freeman*, here no such foot control limitations were discussed by the ALJ, nor did any of the jobs identified by the VE at step 5 involve pushing and pulling of arm or leg controls. (Tr. 20, 31, 80-81); DOT ## 344.667-010, 327.367-018, 652.685-094. Accordingly, plaintiff maintains that *Freeman* is also unavailing to the Commissioner's position.

Furthermore, plaintiff contends that the Commissioner's position in its response relies on a mischaracterization of its regulatory definitions. More specifically, the Commissioner seems to indicate that its regulations essentially do not distinguish between sedentary and light work, but allow these exertional definitions to overlap. (Def. Br. at 6-7, 10-11). According to plaintiff, this mischaracterization is not supported by the plain language of the Agency's rules and policies. Indeed, SSR 83-10 provides that "the primary difference between sedentary and most light jobs" is that light jobs generally require "a good deal of standing or walking," listing as an exception jobs that involve pushing and pulling of arm and leg controls (no such jobs were assessed by the ALJ or VE here). (Tr. 31); SSR 83-10, 1993 WL 31251 *5-6. Moreover, this policy also defines the

range of light work to involve "frequent" lifting and carrying, a term of art which involves standing and walking from one-third to two-thirds of the work day. Thus, while the maximum standing/walking requirement under light work is six hours out of an eight-hour work day, the minimum under the Agency's definitions of "frequent" is one-third of the work day, or more than two hours per day. *Id*.; *see also* 20 C.F.R. 404.1567(b). Further undermining the Commissioner's argument is the regulatory definition of sedentary work, which sets a ceiling of two hours of standing/walking in the work day. *See* SSR 83-10, 1983 WL 31251 at *5 (defining sedentary work as involving a maximum amount of standing and walking for two hours in an eight hour workday). Accordingly, the Commissioner's arguments notwithstanding, plaintiff maintains that the Agency's regulatory definitions make clear that plaintiff was limited to sedentary work under the ALJ's RFC. (Tr. 20).

## III. DISCUSSION

### A. Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C. Analysis

Notably, there is no binding authority from the Sixth Circuit on the precise

issue before the Court. Not only is the *Anderson* case relied on by the Commissioner unpublished, but it also does not address the precise issue here and is factually distinguishable, as ably explained by plaintiff in the reply. There are a number of out-of-circuit cases that more closely track the factual and legal issues presented here, and thus, the Court will endeavor to examine those cases in depth and determine an appropriate outcome.

But first, a discussion of how the Grids operate and the exertional requirements of light work versus sedentary, as defined by the Commissioner, is necessary. The "light work" category in the applicable regulation is described as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b). "Sedentary" is defined as:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a

sedentary job is defined as one which involves sitting, a
certain amount of walking and standing is often
necessary in carrying out job duties. Jobs are sedentary if
walking and standing are required occasionally and other
sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).  SSR 83-12 explains the

difference between "frequent" and "occasionally":

"Frequent" means occurring from one-third to two-thirds
of the time.  Since frequent lifting or carrying requires
being on one's feet up to two-thirds of a workday, the
full range of light work requires standing or walking, off
and on, for a total of approximately 6 hours of an 8–hour
workday.  Sitting may occur intermittently during the
remaining time. The lifting requirement for the majority
of light jobs can be accomplished with occasional, rather
than frequent, stooping. Many unskilled light jobs are
performed primarily in one location, with the ability to
stand being more critical than the ability to walk.  They
require use of arms and hands to grasp and to hold and
turn objects, and they generally do not require use of the
fingers for fine activities to the extent required in much
sedentary work.

"Occasionally" means occurring from very little up to
one-third of the time.  Since being on one's feet is
required "occasionally" at the sedentary level of
exertion, periods of standing or walking should generally
total no more than about 2 hours of an 8–hour workday,
and sitting should generally total approximately 6 hours
of an 8–hour workday. Work processes in specific jobs
will dictate how often and how long a person will need
to be on his or her feet to obtain or return small articles.

SSR 83-12.  Further, "[i]n situations where the rules would direct different

conclusions, and the individual's exertional limitations are somewhere 'in the

middle' in terms of the regulatory criteria for exertional ranges of work, ... [VE] assistance is advisable for these types of cases." *Id*. As explained in *Ferdin v. Colvin*, 2015 WL 7767980, at *8-9 (W.D. Tex. July 30, 2015), the legally non-binding POMS provides further guidance, stating when a plaintiff's "exertional capacity falls in the middle of two rules and the rules direct opposite conclusions," if "the claimant has a slightly reduced capacity for the higher level of exertion," the higher-numbered rule applies and the claimant is not disabled but, if "the claimant has a significantly reduced capacity for the higher level of exertion," the lower-numbered rule applies and the claimant is disabled.

Agency guidelines on disability determinations purport to account for a claimant's physical abilities, age, education, and vocational skills as well as other factors, such as their RFC; these are commonly referred to as the Grids. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2. These guidelines prescribe various grids, and persons who fall within the grids may be defined as disabled (or not disabled) by application of these rules. This rule-making process relieves the Agency of the need to rely on vocational experts by establishing the types and numbers of jobs that exist in the national economy where a claimant's qualifications correspond to the job requirements identified by a particular rule. *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). These regulations provide that the grids will direct a conclusion as to whether an individual is or is not disabled where the findings of

fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule. 20 C.F.R. pt. 404 Subpt. P Appx. 2, § 200(a). Thus, if a claimant such as plaintiff – a person who is closely approaching advanced age – were found to be able only to undertake sedentary work, the grids would mandate a finding that she is disabled. 20 C.F.R., Part 404, Subpart P, Appendix 2, §§ 201.12 and 201.14.

As explained in *Ford v. Colvin*, 2015 WL 4608136, at *7 (D. Del. July 31, 2015), agency policy provides guidance for applying the Grids when a claimant's RFC falls between two exertional levels. *Id*. (citing SSR 83-12, 1983 WL 31253, at *1 (1983)). If a claimant's RFC falls between two levels for which the grids direct the same finding, the ALJ should apply the finding as directed. *Ford*, at *7 (citing SSR 83-12, at *2). If a claimant's RFC falls between two levels for which the grids direct opposite findings, the ALJ must consider whether the claimant is slightly or significantly reduced in his or her ability to perform at the higher exertional level. *Id*; *see also* POMS DI 25025.015. If the claimant's ability is slightly reduced, the ALJ should apply the higher exertional level and find the claimant not disabled. *Id*. (citing POMS DI 25025.015). If the claimant's ability is significantly reduced, the ALJ should apply the lower exertional level and find the claimant disabled. *Id*. In situations where the claimant's ability is somewhere "in the middle," Agency policy advises using a vocational expert. *Id*. (citing SSR

83-12, at *3).  Agency policy also advises the use of a vocational expert if a claimant cannot be found disabled on strength limitations alone and has additional non-exertional limitations that would affect work performance.  *Id*.

In the view of the undersigned, the problem with the analysis by the ALJ underpinning the RFC is twofold.  First, the ALJ's analysis assumes that plaintiff's RFC actually falls somewhere "in the middle" of a sedentary RFC and a light RFC.  Yet, the two most significant defining characteristics of these two categories of work are (1) the amount and duration a claimant can lift/carry in an 8 hour work day; and (2) the amount of time in an 8 hour work day that a claimant can stand and walk.  Sedentary work involves lifting/carrying no more than 10 pounds, occasionally, meaning up to 1/3 of the work day; in other words, someone with a sedentary classification may be on their feet up to 2.67 hours per day, and may not lift or carry more than 10 pounds in that time limit.  Light work involves lifting no more than 20 pounds at a time with frequent (1/3 to 2/3 of an 8 hour work day) lifting or carrying of objects weighing up to 10 pounds.  Thus, someone who can perform light work must be able to lift and carry 10 pounds for 2.67-5.33 hours per day.  By logical extension, light work requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and carrying up to 10 pounds in that time.  *See* SSR 83-10, *5 ("lifting or carrying requires being on one's feet.").  Yet here, the ALJ found that plaintiff could only walk/stand for up to 2 hours per day.  Thus,

not only is plaintiff unable to perform the minimum walking/standing requirement for light work, she also cannot meet the minimum lifting and carrying requirements for light work. Secondly, in the view of the undersigned, it is not clear that the ALJ considered this limitation before apparently determining that plaintiff's RFC fell "in the middle" of sedentary and light. *See e.g.*, *Ford v. Colvin*, 2015 WL 4608136, *8 (D. Del. 2015) (Remand required where ALJ offered no explanation as to why the "plaintiff cannot do either of the two things at the heart of light work [walking/standing and lifting/carrying] and still be classified as capable of performing it."); *McClure v. Comm'r of Soc. Sec.*, 2016 WL 4628049, *7 (S.D. Cal. 2016) (ALJ's conclusion that the plaintiff could only stand/walk two hours per day put her closer to sedentary work than light work and thus, her exertional limitations did not fall "somewhere in the middle.").

Indeed, such a consideration appears absent from the ALJ's decision. The ALJ gave partial weight to a variety of medical opinions addressing plaintiff's ability to lift and carry in accordance with the light work category, but those opinions also concluded that plaintiff could stand/walk significantly longer than two hours per day. (Tr. 26, 94, 107, 344). Yet, the ALJ does not appear to have considered how the limitation of standing/walking two hours per day mandates a concomitant limitation in the lifting/carrying required by light work, and whether this means that plaintiff's RFC is not actually "in the middle" of sedentary and

light work.  Moreover, the ALJ did not expressly address the attendant limitation in lifting/carrying in his hypothetical questions posed to the VE.  (Tr. 79-80).  In the absence of such consideration, the ALJ's decision "fails to provide an accurate and logical bridge between the evidence and the result.' " *Gross v. Comm'r of Soc. Sec.*, —— F.Supp.3d ——, 2017 WL 1151099, at *4 (E.D. Mich. March 28, 2017) (Patti, M.J.) (citing *Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044, *6 (E.D. Mich. Jan. 6, 2011)).

Similar errors have been analyzed by a number of courts around the country and most often, remand is required.  Plaintiff asks the Court to follow *Campbell v. Astrue*, while the Commissioner urges the Court to reject this line of cases.  In *Campbell*, the ALJ found that a fifty-one-year-old claimant could sit for up to eight hours in an eight hour workday and stand and walk for no more than one to two hours in an eight-hour workday.  *Id*. at *1.  The ALJ concluded that the claimant could perform a narrowed range of light work and sought vocational expert testimony concerning the work Campbell could perform.  *Id.* at *3.  After the vocational expert identified the relevant jobs, the ALJ concluded that the claimant was not disabled.  *Id*.  The magistrate judge recommended that the Commissioner's decision be reversed and the matter remanded for further proceedings:

> [T]he ALJ's finding that his RFC allowed for a

"narrowed range of light work" is problematic in two senses. First, the ALJ's characterization of Plaintiff's exertional capabilities as within the range of "light work" is incongruent with the ALJ's particularized finding that Campbell is limited with respect to standing and walking. As SSR 83–10 explains, a job is in the "light" category "when it requires a good deal of walking or standing," and this is "the primary difference between sedentary and most light jobs," with the exception of sitting jobs requiring pushing or pulling of arm or leg controls and not applicable here. Second, the principal finding as to Campbell that corresponded with the exertional capabilities at the "light" level was the finding about the amount of weight he could lift: up to 20 lbs. occasionally and 10 lbs. frequently. *See* 20 C.F.R. § 404.1567(b) (characterizing light work as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds"). In order for someone to be able to "lift or carry" objects of a particular weight on a "frequent" basis, however, that individual would need to be able to walk and stand for a much larger portion of the day than the "no more than one to two hours in an eight hour work day" of which the ALJ found Campbell to be capable..... There is thus an inherent contradiction between the ALJ's finding that Campbell could "frequently" lift or carry 10 lbs.—which, pursuant to SSR 83–10, would require Campbell to be on his feet for between approximately 3 to 6 hours of an 8–hour workday—and his finding that Campbell had the capacity to perform work requiring "standing or walking for no more than one to two hours in an eight hour work day."

*Id*. at *5.

A number of Courts have made observations similar to those in *Campbell* and concluded that a remand was necessary because of the internal inconsistency

in concluding that a claimant could generally perform light work based on strength requirements, but was unable to perform even the minimum standing/walking requirement for light work, which would necessarily mean that the claimant could not meet the strength requirements either.  For example, in *Ferdin v. Colvin*, 2015 WL 7767980, *11 (W.D. Tex. 2015), the ALJ assessed an RFC to perform a range of light work, but limited the plaintiff to two hours of standing or walking in an 8 hour workday, which equates to one-fourth of an 8 hour workday.  The Court observed that under SSR 83-10, work at the light exertional level requires standing or walking from one-third to two-thirds of an 8 hour workday, which is a greater period of time than the two hours to which the ALJ limited the plaintiff.  And, just as in *Campbell*, "the principal finding" as to the plaintiff that corresponded with the exertional capabilities at the "light" level was the finding about the amount of weight he could lift: up to 20 pounds occasionally and 10 pounds frequently.  Yet, under policy statement SSR 83-10, "occasional" means up to one-third of an 8 hour workday, while "frequent" is defined as one-third to two-thirds of an 8 hour workday, and "frequent lifting or carrying requires being on one's feet up to two-thirds of a workday."  Therefore, like the *Campbell* analysis, the *Ferdin* court concluded that the ALJ's RFC contained "inherent contradictions and

incongruities," requiring remand. *Id.*[2]

In *Franklin v. Berryhill*, 2017 WL 2080196 (M.D. Penn. 2017), the Court reached a result similar to that in *Campbell*, but under slightly different reasoning. In *Franklin*, the claimant was limited to occasional standing and walking and he could, therefore, also lift/carry objects up to 10 pounds occasionally. *Id.* at * 9. Thus, his walking/standing and lifting/carrying capabilities were less than those required for light work. Yet, his pushing and pulling capabilities were consistent with seated light work positions. Notably, if his exertional capacity were determined to be sedentary, a finding of disability would be directed, while if it were determined to be light, a finding of no disability would be directed. *Id.* While the court rejected the plaintiff's claim that the POMS were "judicially enforceable" and also concluded that SSR 82-12 did not "mandate" reversal, the court found remand was necessary because the ALJ's RFC determination did not include "any discussion of the assignment of the light exertional capacity in spite

---

[2] In *Ferdin*, the Court also observed that, under SSR 83-10, light work may permit "sitting most of the time" but this requires "some pushing and pulling of arm or leg controls." *Id.* In that case, the ALJ's RFC finding limited the plaintiff to never pushing or pulling with the upper extremities. Thus, the Court concluded that, under the regulatory definitions as applied by the ALJ's RFC determination, the plaintiff may be unable to perform substantially all of the requirements of light work, as he was limited to two hours of standing or walking in an 8–hour workday (equal to one-fourth of the day) and can never push or pull with his upper extremities. *Id.* at *11. In the instant matter, the jobs identified by the VE do not appear to be those that permit sitting most of the time while requiring pushing and pulling of arm or leg controls. Notably, the ability to perform such seated light jobs was also the basis for the Court in *Freeman v. Colvin*, 2016 WL 697140, *5-6 (E.D. Tenn. 2016) for distinguishing *Campbell*.

of the reductions discussed above" and thus, the "[c]ourt cannot conclude that the outcome determinative designation is supported by substantial evidence." *Id*. at *10[3]; *see also Bisceglia v. Colvin*, 173 F.Supp.3d 326, 335-36 (E.D. Va. 2016) (The ALJ did not mention the Grid rules for sedentary work or why he chose the Grid rules for light work over those for sedentary work and the court cannot ignore the "obvious conflict between the ALJ's finding that Plaintiff's limitation impeded her ability to perform '*all or substantially all* of the requirements' of light work, ... and the ALJ's decision not to use the Grid rules for sedentary work.") (emphasis supplied in *Bisceglia*); *Villareal v. Colvin*, 221 F.Supp.3d 835, 851 (W.D. Tex. 2016) (Following *Ferdin*, the Court concluded that where plaintiff limited to standing/walking 2 hours per day, plaintiff may be unable to perform substantially all the requirements for light work; and where error was outcome determinative, remand was required.).

*Ambrose v. Colvin*, 2015 WL 877790 (M.D. Penn. 2015) appears to be the

---

[3] The *Franklin* Court determined that standing/walking up to 1/3 of the day did not fall into the light work category because the "up to" 1/3 of the day upper limit in the sedentary category and the 1/3-2/3 range for light work "butted up" to one another but were not the same. *Id*. at *10; *see id.* at 11 ("The Court is aware that both *Ford* and *Campbell* contain a more clear distinction between sedentary and light exertional levels because the stand/walk limitations are greater and two hours in an eight-hour day does not butt up against 'frequent' as does Plaintiff's 'occasional' stand/walk limitation. However, because there is a distinction between occasional and frequent and because the level classification is outcome determinative, remand for clarification is the appropriate course."). In this case, reaching such a conclusion is not necessary because the ALJ plainly found that plaintiff was limited to 2 hours of walking/standing in an 8 hour day, which falls outside the low end of the light work range.

leading case rejecting the reasoning in *Campbell* and its progeny. In rejecting the

analysis in *Campbell*, the court explained:

> However, SSR 83–10 describes the full range of light
> work as involving standing or walking frequently, which
> is defined as existing as little as one-third of the time.
> According to the RFC, Plaintiff was capable of
> occasional walking/ standing, which Plaintiff concedes
> equates to up to one-third of an eight (8) hour work day.
> Therefore, the standing/ walking required for a full range
> of light work (as little as one-third of an eight (8) hour
> workday) is potentially equal to Plaintiff's ability to
> engage in occasional standing/ walking (as much as
> one-third of an eight (8) hour workday), depending on
> the light work job involved.
>
> Furthermore, in *Campbell*, the court failed to emphasize
> that 20 C.F.R. §§ 404.1567(b), 416.967(b) and SSR
> 83–10 provide requirements for a full range of light
> work, not a limited range of light work. In the case at
> hand, the ALJ made it clear that Plaintiff, while able to
> engage in light work, was limited in a multitude of ways;
> thus, Plaintiff was able to engage in a limited range of
> light work. (Tr. 18). Because Plaintiff could not perform
> the full range of light work, the ALJ appropriately
> consulted the VE in accordance with SSR 83–12, and
> included all of the RFC limitations in his hypothetical,
> including that Plaintiff was limited to only occasional
> standing/ walking. (Tr. 56–57). The VE, in considering
> the RFC limitations, concluded that Plaintiff could
> perform the following limited range of light work jobs:
> weigher scales operator; small parts assembler; and an
> inspector position. (Tr. 57–58).

*Id.* at *15. Yet, as explained in *Ferdin*, the ALJ in *Ambrose* limited the plaintiff's

RFC to occasional walking and standing, meaning that Ambrose could stand or

walk for 1/3 of the 8 hour work day, which falls within the scope of light work as described in SSR 83-10. *Id*. at *10. To begin with, the ALJ's walking/standing limitation of two hours in the instant case is less than 1/3 of an 8 hour workday, thus weakening, if not foreclosing, the application of the *Ambrose* rationale to this case. Moreover, the undersigned is not persuaded by *Ambrose*'s contention that SSR 83-10 merely describes the "full range" of light work without any limitation. SSR 83-10, on its face, describes a range of light work and a particular claimant may fall at various points within that range. There could certainly be situations where a claimant's RFC could fall within that range and, depending on other exertional or nonexertional limitations, or other factors, the consultation of a vocational expert would still be required. Thus, the mere consultation of a VE in this case, does not cure the error as the Commissioner has posited. *See Franklin*, at *11 n. 10 ("The Regulations indicate that a capability of performing a '*full or wide range* of light work' requires the individual to do substantially all of the listed activities and SSR 83-10 explains that a '*full range* of light work requires being on one's feet for a total of approximately six hours in an eight-hour day.' 20 C.F.R. §§ 404.1567(b), 416.927(b); SSR 83-10, 1983 WL 31251, at *6 (emphasis added [in *Franklin*]). Though being found capable of a limited range of light work alleviates these requirements, it does not necessarily follow that the exertional level should be assigned when the claimant does not have the capability of

performing most of the defined activities at even the minimum level identified.").

Again, as explained above, the ALJ does not appear to have considered how the limitation of standing/walking two hours per day necessarily mandates an accompanying limitation in the lifting/carrying required by light work, and whether this means that plaintiff's RFC is not actually "in the middle" of sedentary and light work. Moreover, the ALJ did not expressly address the attendant limitation in lifting/carrying in his hypothetical questions posed to the VE. (Tr. 79-80). In the absence of such consideration, the undersigned concludes that ALJ's decision "fails to provide an accurate and logical bridge between the evidence and the result.'" *Gross*, 2017 WL 1151099, at *4. Additionally, because this issue is outcome determinative, based on plaintiff's age, the undersigned believes following the reasoning in *Campbell* and its progeny is appropriate. Thus, based on the foregoing, the undersigned concludes that this matter should be remanded for further explanation by the ALJ regarding the basis for his decision that plaintiff's RFC falls within the light work category, consistent with this report and recommendation.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc. If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 22, 2017                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 22, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov